**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1583-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ZAKEER ROBERTS, a/k/a
AHMAD IBN MUHAMMAD,
ZAKEER T. ROBERTS,
ZAKEE ROBERTS,
ZAKEER A. ROBERTS, and
ZAKEER M. ROBERTS,

     Defendant-Appellant.

_____

Submitted January 9, 2024 – Decided March 4, 2024

Before Judges Gooden Brown and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 14-08-1130.

Joseph E. Krakora, Public Defender, attorney for appellant (Kisha M. S. Hebbon, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Edward F. Ray, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Zakeer Roberts appeals from the Law Division's November 23, 2021 order denying his petition for post-conviction relief (PCR), which was decided with a limited evidentiary hearing. Having reviewed the record and defendant's arguments in light of the applicable law, we affirm.

I.

On September 1, 2013, defendant and three co-defendants traveled to G.M.'s house in Bergenfield to steal drugs and money from him. During the home invasion, defendant shot both G.M. and his landlord, J.N. A Bergen County grand jury indicted defendant on charges of second-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2, :18-2 (count one); second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2, :15-1 (count two); second-degree burglary with a deadly weapon, N.J.S.A. 2C:2-6, :18-2 (count three); first-degree armed robbery, N.J.S.A. 2C:2-6, :15-1 (count four); first-degree kidnapping, N.J.S.A. 2C:2-6, :13-1(b)(1) (counts five through seven); first-degree attempted murder, N.J.S.A. 2C:2-6, :5-1, :11-3 (counts eight and nine); second-degree possession of a firearm for an unlawful purpose, N.J.S.A.

2C:2-6, :39-4(a) (counts ten and eleven); second-degree possession of a handgun without a permit, N.J.S.A. 2C:2-6, :39-5(b) (counts twelve and thirteen); and third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(1) (count fourteen).

On March 24, 2017, pursuant to a negotiated agreement with the State, defendant pleaded guilty to two counts of first-degree attempted murder (counts eight and nine). In exchange for the guilty plea, the State agreed to recommend the court impose a concurrent sentence of twenty years' imprisonment for each count, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and the Graves Act, N.J.S.A. 2C:43-6(c), to run concurrent with the state prison sentence defendant was already serving. The State also agreed to dismiss the remaining counts of the indictment.

During the plea colloquy, defendant confirmed that he understood the terms of his plea agreement with the State, as memorialized in the plea forms. Defendant acknowledged he was satisfied with the advice and legal guidance of trial counsel, counsel satisfactorily answered his questions, and he had no additional questions for counsel at that time. After establishing the factual basis for his plea, defendant acknowledged he was subject to a maximum sentence of twenty years on each count. The court determined defendant was entering into

A-1583-21

the plea agreement knowingly and voluntarily, found there was an adequate factual basis to support the guilty plea, and accepted the plea.

At the sentencing hearing on May 19, 2017, trial counsel asked the court to consider imposing a seventeen-year term of imprisonment on each count, based on defendant's acceptance of responsibility and his level of involvement as compared to his co-defendants.

Pursuant to N.J.S.A. 2C:44-1(a), the court found aggravating factors three (the risk defendant will commit another offense), six (the extent of defendant's prior criminal record and the seriousness of the offenses of which defendant has been convicted), and nine (the need for deterring defendant and others from violating the law). The court noted defendant's prior criminal history, which included several disorderly persons offenses, indictable offenses, and juvenile violations of probation. Pursuant to N.J.S.A. 2C:44-1(b), the court found mitigating factor eleven (the imprisonment of defendant would entail excessive hardship to defendant or his dependents), but afforded this factor "slight weight" because "anyone facing a . . . [p]rison term endures a hardship."

The court found the aggravating factors outweighed the mitigating factor, determined "the sentence contemplated in the plea agreement [was] appropriate under these circumstances," and sentenced defendant to twenty years on each

4

count, subject to NERA and the Graves Act, to run concurrent with each other and the previously imposed prison term.

After imposing sentence, the court reminded defendant he had forty-five days to appeal the conviction and sentence, along with a thirty-day extension for good cause shown, and the right to file a petition for PCR within five years. Defendant acknowledged he understood his rights and the corresponding time limitations, had discussed the matters with trial counsel, and had no further questions about his right to file an appeal. Based on that colloquy, the court found defendant had "knowingly and intelligently executed the appeal rights form and clearly [understood his] appeal rights."

Defendant did not file a direct appeal. He filed a petition for PCR on March 26, 2021, followed by a supporting brief on August 6, 2021. Defendant asserted his trial counsel was ineffective by failing to argue as a mitigating factor that defendant's sentence was disproportionate to his co-defendants' sentences, by failing to file a direct appeal, and for cumulative error. According to defendant, he and a co-defendant who was also Black, received twenty-year sentences as negotiated in their individual plea agreements, in contrast to two white co-defendants, who received seven-year sentences as negotiated in their plea agreements. Defendant also attached an unsigned certification to his

petition, in which he averred he "advised [trial counsel] to file a direct appeal and to challenge the excessiveness of [his] sentence."

Following oral argument, the PCR judge issued a written opinion and order dated October 1, 2021, denying in part and granting in part defendant's petition. The judge found defendant failed to establish a prima facie claim of ineffective assistance of counsel based on trial counsel's failure to argue defendant's race as a mitigating factor at sentencing, and denied that claim.[1] The court granted defendant's request for an evidentiary hearing regarding his contention that trial counsel failed to file a direct appeal because it presented a disputed factual issue.

On November 12, 2021, the PCR court conducted an evidentiary hearing, during which defendant and his trial counsel testified. In a written decision dated November 23, 2021, the judge weighed the testimony and credibility of the witnesses:

> The court finds that [counsel], a seasoned and well-regarded criminal defense attorney in New Jersey, to be credible and that the evidence in the record contradicts [defendant's] claim that he instructed [counsel] to file a direct appeal following sentencing. Throughout his testimony, [counsel] made clear that he did not receive express instructions to file a direct appeal on behalf of [defendant]. Moreover, [counsel's] claim that "it was

---

[1] Defendant did not appeal the court's October 1, 2021 order.

not my task to appeal" is buttressed by several facts. First, the retainer agreement between [defendant] and [counsel] specifically excluded "any other matters, including appeals." Second, [counsel] testified that, despite having represented criminal defendants at the trial level for over three decades, he did not perform appellate work at the state level in New Jersey. Third, following sentencing, when asked by [defendant] and his parents as to how [defendant] should proceed, [counsel] made clear that they should wait until [defendant]'s co-defendants were sentenced before entertaining next steps. ([Defendant] asked [counsel], "What can we do?" to which [counsel] told [defendant] in front of his family, "We should watch what happens with the others' (co-defendants) sentencing.") [Counsel's] testimony about the interaction between himself and [defendant] following sentencing provides the court with additional context that cuts against [defendant]'s claim that he explicitly instructed [counsel] to file a direct appeal.

[(citations to the record omitted).]

Satisfied by trial counsel's "adequate recollection of [defendant]'s case and the events that unfolded around his sentencing," and his "comprehensive testimony," the PCR judge found "sufficient credible evidence in the record" that defendant "did not instruct [trial counsel] to file a direct appeal." The judge concluded defendant failed to establish a prima facie case of ineffective assistance of counsel because he did not "sufficiently demonstrate" his request for trial counsel to file an appeal, and denied the petition.

7

This appeal followed, during which defendant raises the following issue for our consideration:

> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE THERE WAS SUFFICIENT EVIDENCE PRESENTED DURING THE EVIDENTIARY HEARING TO PROVE THAT DEFENDANT WAS DENIED THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO FILE A DIRECT APPEAL ON DEFENDANT'S BEHALF AFTER DEFENDANT INSTRUCTED HIM TO DO SO.

We disagree and affirm.

## II.

We begin with our standard of review. Following an evidentiary hearing, as was conducted here, we afford deference to a PCR court's factual findings "'supported by sufficient credible evidence in the record.'" State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Nash, 212 N.J. 518, 540 (1992)). This is so because "[a]n appellate court's reading of a cold record is a pale substitute for a trial judge's assessment of the credibility of a witness [the judge] has observed firsthand." Nash, 212 N.J. at 540. We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

To succeed on a claim of ineffective assistance of counsel, a defendant must establish both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), by a preponderance of the evidence. State v. Gaitan, 209 N.J. 339, 350 (2012). First, a "defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. This requires demonstrating that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. The Constitution requires "reasonably effective assistance," so an attorney's performance may not be attacked unless they did not act "within the range of competence demanded of attorneys in criminal cases" and instead "fell below an objective standard of reasonableness." Id. at 687-88.

When assessing the first Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999) (citing State v. Davis, 116 N.J. 341, 357 (1989)). Thus, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]" and "the

defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Further, the court must not focus on the defendant's dissatisfaction with "counsel's exercise of judgment during the trial . . . while ignoring the totality of counsel's performance in the context of the State's evidence of [the] defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006).

For the second prong of the Strickland test, "the defendant must show that the deficient performance prejudiced the defense." 466 U.S. at 687. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Ibid.

Counsel has "a constitutionally-imposed duty to consult with the defendant about an appeal" when "a rational defendant would want to appeal," or when the "particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). "[A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Ibid. "In defining the reach of the Sixth

Amendment, . . . 'a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.'" State v. Jones. 446 N.J. Super. 28, 32 (App. Div. 2016) (quoting Flores-Ortega, 528 U.S. at 477). That is because the failure to file a notice of appeal "cannot be labeled a strategic decision" but "'is purely a ministerial task'" and such a failure "'reflects inattention to the defendant's wishes.'" Ibid. (quoting Flores-Ortega, 528 U.S. at 477).

Deficient representation occurs in two instances: (1) where counsel has consulted the defendant but "fail[s] to follow the defendant's express instructions with respect to an appeal"; or (2) where counsel has not consulted with the defendant but that "failure to consult . . . itself constitutes deficient performance." Flores-Ortega, 528 U.S. at 478. In the former instance, "prejudice is presumed," Jones, 446 N.J. Super. at 37 (citing id. at 484), and the defendant "is not required to show he 'might have prevailed' in [the] forfeited appeal," id. at 33 (quoting Flores-Ortega, 528 U.S. at 484). The presumption follows because counsel's error does not "lead 'to a judicial proceeding of disputed reliability'" but "a 'forfeiture of the proceeding itself.'" Ibid. (quoting Flores-Ortega, 528 U.S. at 483). In the latter instance, the court must consider "'whether counsel's assistance was reasonable considering all the

circumstances'" and "whether counsel's deficient performance 'actually cause[d] the forfeiture of the defendant's appeal.'"  Id. at 33-34 (alteration in original) (first internal quotation marks omitted) (quoting Flores-Ortega, 528 U.S. at 478, 484).

Because the PCR judge conducted an evidentiary hearing and found by "sufficient credible evidence in the record" that defendant "did not instruct [trial counsel] to file a direct appeal," defendant was not entitled to the Flores-Ortega presumption of prejudice.  See Jones, 446 N.J. Super. at 37 (citing Flores-Ortega, 528 U.S. at 484).  Instead, defendant was required to demonstrate that trial counsel's failure to file a notice of appeal was not "'reasonable considering all the circumstances'" and that the deficiency in representation actually caused defendant's denial of an appeal.  Id. at 33-34 (quoting Flores-Ortega, 528 U.S. at 478, 484).

Defendant also fails to allege any prejudice save for one sentence in his brief, which claims "had trial counsel filed his direct appeal, [defendant] would have been able to challenge his excessive sentence and could have had his [twenty]-year sentence reduced."  However, as trial counsel testified, defendant was subject to imprisonment for "[t]he rest of his life" absent the plea agreement. At no time did trial counsel advise defendant he would file an appeal; to the

12

contrary, the retainer agreement excluded appellate representation. Notwithstanding his insistence he requested trial counsel to file an appeal, defendant shows no actual cause for the denial of his right to appeal based on trial counsel's performance. Cf. Jones, 446 N.J. Super. at 33-34 (citing Flores-Ortega, 528 U.S. at 478, 484).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1583-21